**MIDDLEBROOKS SHAPIRO, P.C.**
P.O. Box 1630
Belmar, New Jersey 07719-163
(973) 218-6877
Melinda D. Middlebrooks, Esq.
middlebrooks@middlebrooksshapiro.com
*Subsisted Counsel for Byung Rai Cho*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Case No.: 23-13862-RG |
| **BYUNG RAI CHO**, | Honorable Rosemary Gambardella |
| Chapter 7 Debtor. | Chapter 7 |

**BRIEF IN SUPPORT OF MOTION FOR ORDER
CONVERTING CASE FROM CHAPTER 7 TO CHAPTER 13
PURSUANT TO 11 U.S.C. § 706(a) AND GRANTING RELATED RELIEF**

Byung Cho, the above-captioned Chapter 7 debtor (the "**Debtor**"), by and through his counsel Middlebrooks Shapiro, P.C., hereby moves for entry of an Order Converting Case from Chapter 7 to Chapter 13 Pursuant 11 U.S.C. § 706(a) and Granting Related Relief (the "**Motion**") and respectfully states as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction to review and determine this matter pursuant to 28 U.S.C. §§ 157(z) and 1334 and the *Standing Order of Reference from the United States District Court for the District of New Jersey* entered September 18, 2012 (Simandle, C.J.).

2. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

3. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The Debtor is eligible to be a debtor under 11 U.S.C. § 109(e).

1

**PROCEDURAL BACKGROUND**

5. Debtor's former attorney, Amit Deshmukh, Esq. ("**Deshmukh**") filed the Debtor's Petition, Schedules and Statements[1] commencing a Chapter 7 proceeding on May 5, 2023 (the "**Filing Date**"). The Petition, Schedules and Statements were supplemented on May 8, 2023.[2]

6. The first scheduled 341(a) Meeting was scheduled for June 8, 2023[3] and the docket reflects that the First Meeting Minutes were filed on June 12, 2023.[4]

7. The Chapter 7 trustee (the "**Trustee**") filed an application to employ his law firm as counsel for the Trustee on July 9, 2023.[5] The Order granting this application was entered on July 18, 2023.[6]

8. On August 3, 2023, the Trustee filed a *Notice of Assets & Request for Notice to Creditors* (the "**Notice of Assets**").[7] The Notice of Assets improperly and without legal support reflects the Debtor as "Byung Rai Cho dba CBR Products Corp". *Id.* No specific assets were identified in the Notice of Assets. *Id.* The Notice of Assets reflects a Bar Date of November 1, 2023 for creditors to file proofs of claim. *Id.*

9. On August 7, 2023, the Trustee commenced an adversary proceeding, *David Wolff, Chapter 7 trustee v. Byung Rai Cho*, Adv. Pro. No. 23-01207-RG ("**Adversary 01207**"), to be filed against the Debtor objecting to the global discharge of the Debtor's debts and liabilities pursuant to 11 U.S.C. §§ 727(a)(3), (a)(4)(A), (a)(4)(D), (a)(5) and (c)(1).[8]

---

[1] Docket Nos. 1 and 3.
[2] Docket No. 10 and 11.
[3] Docket No. 5.
[4] Docket Entry dated June 6, 2023 (no document).
[5] Docket No. 14.
[6] Docket No. 15.
[7] Docket No. 19.
[8] Docket No. 21.

10. On August 18, 2023, the Trustee filed an application for retention of the law firm of Rabinowitz, Lubetkin & Tully, LLC (the "**Rabinowitz Firm**") as special counsel[9] (the "**Rabinowitz Application**") to "represent the bankruptcy estate's interest in connection with adversary proceeding(s) seeking to: (1) avoid the [alleged] fraudulent transfer of certain real and/or personal property located in New Jersey, New York and/or California; and recover the value of Debtor's equity interest in certain real and/or personal property located in New York and/or California."[10] The Rabinowitz Application included a recitation that the professional services to be rendered are to "represent the bankruptcy estate's interest in an adversary proceeding(s) again, among others, Eric Cho, Edward Cho, Hae K. Cho and Jannai Cho, E&E Consulting and CBR Products Corporation seeking to recover the bankruptcy estate's interest in certain [allegedly] fraudulently transferred real and/or personal property located in New Jersey, New York and/or California pursuant to 11 U.S.C. §548 and/or the New Jersey Fraudulent Transfer Act, N.J.S.A. 25:2-25 and 27, or other applicable state law…".[11] On August 30, 2021, an order granting the Rabinowitz Application was entered on the docket.[12]

11. On August 21, 2023, the Trustee commenced a second adversary proceeding, *David Wolff, Chapter 7 trustee v. Jannai Cho and Edward Cho*, Adv. Pro. No. 23-01236-RG ("**Adversary 01236**"), seeking (1) avoidance and recovery of alleged actual fraudulent transfer pursuant to 11 U.S.C. §§ 544(b) and 550. and Cal. Civil Cod §§ 3439.04(a)(1) and 3439.07(a)(1); (2) avoidance and recovery of alleged constructively fraudulent transfer pursuant to 11 U.S.C. §§ 544(b) and 550; and Cal. Civil Code §§ 3439.04(a)(2) and 3439.07(a)(1); and avoidance and recovery of alleged constructively fraudulent transfer pursuant to 11 U.S.C. §§ 544(b) and 550;

---

[9] Docket No. 22.
[10] *See* Docket No. 22, Rabinowitz Application at p.2, ¶5(a).
[11] *See Id*. at ¶5(b).
[12] Docket No. 26.

3

and Cal. Civil Code §§ 3439.05 and 3439.07(a)(1) regarding Debtor's transfer of his one-half (1/2) interest in property known as 3875 Par Drive, Yorba Linda, California (the "**Property**") [Docket No. 31].

12. On August 31, 2023, the Rabinowitz Firm filed an application for retention of Katje Law Group as special counsel to Trustee citing "their considerable experience in the field of California real estate law and associated transactional law."[13] The Order authorizing that retention was filed on September 12, 2023.[14]

13. On September 7, 2023, former bankruptcy counsel to the Debtor filed a Motion to Extend Time to File an Answer to Adversary 01236. The Motion included Debtor's Certification in Support of Motion to Extend Time dated September 7, 2023 (the "**September 7th Certification**").[15] The September 7th Certification included information regarding the Debtor's failed attempts to retain counsel as Deshmukh had advised him that "he does not generally handle those matters or have much experience in handling such matters."[16] The Debtor certified that he was advised by Deshmukh he would be away in Japan from September 8, 2023 through September 21, 2023 which formed, in part, the request for an extension of time for the Debtor to file a responsive pleading.[17]

14. On September 18, 2023, the Trustee commenced a third adversary proceeding, *David Wolff, Chapter 7 Trustee v. Edward Cho, Eric J. Cho, Hae K. Cho, CBR Products Corporation, E&E Group Corporation*, Adv. Pro. No. 23-01253-RG ("**Adversary 01253**"), was filed with this Court.[18]

---

[13] Docket No. 25.
[14] Docket No. 29.
[15] Docket No. 29.
[16] *See,* Docket No. 7, September 7th Certification, p.1 at ¶3.
[17] *Id.*
[18] Docket No. 31.

4

15. On September 22, 2023, the Rabinowitz Firm filed a Request to Enter Default Against Jannai Cho and Edward Cho together with the Affidavit of Barry J. Roy, Esq. in support of an Entry of Default.[19]

16. On September 22, 2023, the undersigned filed a Notice of Appearance on behalf of Defendants Jannai Cho and Edward Cho. [Adversary 01236 Docket No. 6].

17. On September 23, 2023, the undersigned filed a Certification in opposition to the Request to Enter Default against Defendants Jannai Cho and Edward Cho detailing the deficiencies in service of process upon the defendants.[20]

18. On September 26, 2023, the undersigned filed the Substitution of Attorney terminating Deshmukh as counsel for the Chapter 7 Debtor.[21]

19. On September 26, 2023, the Rabinowitz Firm filed a Brief in Opposition to the

20. On September 28, 2023, the Court scheduled a hearing on the Certification filed in opposition to the Request to Enter Default returnable October 10, 2023.[22]

21. The hearing on the Request to Enter Default against the Debtor in Adversary 01207 was also adjourned to October 10, 2023.[23]

22. On behalf of the Debtor, 2004 Subpoenas for were issued to Deshmukh and the Trustee.

23. Deshmukh provided his response to the 2004 Subpoena on October 14, 2023.

24. On October 18, 2023, the Trustee, through counsel, advised that the Trustee does not have any recordings of his three (3) in-office meetings with the Debtor and Deshmukh, and will not produce his communications, correspondence and document exchanges with Deskmukh.

---

[19] Adversary 01236, Docket No. 4.
[20] Adversary 01236, Docket No. 7.
[21] Docket No. 33.
[22] Adversary 01236, Docket No. 11.
[23] Docket Entry dated October 3, 2023.

5

25. Based upon the documents available and the information provided by Deshmukh and the Debtor, the Debtor is preparing a Chapter 13 Plan to address the issues raised by the Trustee in his three adversary cases. The Chapter 13 Plan will address any non-exempt interests held by the Debtor as of the Filing Date as detailed in greater detail below.

## **REQUEST FOR RELIEF**

## **CONVERSION TO CHAPTER 13 IS APPROPRIATE**

26. The Debtor moves for conversion of this case from Chapter 7 to Chapter 13.

27. The Debtor seeks to convert and submits that he is eligible to convert his Chapter 7 case to a Chapter 13 proceeding pursuant to Bankruptcy Code Sections 706(a) and (d). Section 706 provides, in pertinent part, that:

> (a) The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.
>
> * * *
>
> (d) Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.

11 U.S.C. § 706(a) and (d).

28. This case has not been converted previously under Sections 1112, 1208 or 1307 of the Bankruptcy Code.

29. The Debtor will be filing amended Petition Schedules and related documents.

30. The Debtor is eligible to convert his Chapter 7 case to Chapter 13 as he has met the criteria set forth in Section 109 which provide, in pertinent part, that:

> (e) Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated debts of less than $2,750,000 or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe on the date of the filing of the

6

> petition, noncontingent, liquidated debts that aggregate less than $2,750,000 may be a debtor under chapter 13 of this title.

11 U.S.C. §109(e).

31. Although the November 1, 2023 bar date deadline for creditors to file Proofs of Claim has not yet passed, Debtor's Schedule E/F reflected noncontingent, liquidated debtors of less than $2,750,000.00.[24]

32. The Debtor is a seventy-three (73) year old individual who receives regular income by way of monthly social security payments in the sum of $1,774.00. Monthly social security payments have been deemed sufficient to meet the regular income requirement of Chapter 13. *See*, *Bibb County Dept. of Family & Children Services v. Hope* (*In re Hammonds*), 729 F.2d 1391, 1395 (11th Cir. 1984) and *In re Murphy*, 226 B.R. 601, 605 (Bankr. M.D. Tenn. 1998). The Debtor submits that his monthly regular income by way of social security payments satisfies the income prong of eligibility under 11 U.S.C. §109(e).

33. The Debtor is aware that there is no absolute right to convert a Chapter 7 case to a Chapter 13 proceeding. *Marrama v. Citizens Bank of Mass.*, 127 S.Ct. 1105 (2007). This is because a motion for "conversion may be denied where 'cause' would exist to convert or dismiss the debtor's Chapter 13 case under 11 U.S.C. § 1307(c), including inability to propose a confirmable plan and bad faith." *In re Wood*, 601 B.R. 754, 764 (Bankr. W.D. Ky. 2019) (citing *Marrama* 549 U.S. at 373-74). In *Marrama*, the Supreme Court affirmed the First Circuit Court of Appeals decision that the right to convert from Chapter 7 to Chapter 13 is "absolute only in the absence of **extreme circumstances**." *Marrama*, 127 S.Ct. at 1109 (*quoting In re Marrama*, 313 B.R. 525, 531 (1st Cir. BAP 2004) (emphasis added). As explained in *Porreco v. Skiba (In re Porreco)*, 333 B.R. 310, 313 (Bankr. W.D. Pa. 2005):

---

[24] *See*, Docket No. 1, Schedule E/F at p.9.

7

> The Court thus adopts a test that would preclude or condition a debtor's right to convert from a Chapter 7 case to a Chapter 13 case under 11 U.S.C. § 706(a) only under extraordinary circumstances in which conversion is sought in bad faith, or in which the totality of circumstances on the date of filing the motion for conversion give rise to significant potential prejudice to creditors regardless of any consideration of bad faith.

(citing *In re Kuhn*, 322 B.R. 377 (Bankr. ND IN 2005)).

34. Here, no such extraordinary circumstances exist, and the Debtor can convert this case under Section 706(a). As outlined herein, conversion is not sought in bad faith, and there is no significant potential prejudice to creditors as a result of conversion. The Debtor intends to file a obtain confirmation of a feasible Chapter 13 plan of reorganization. Moreover, no "cause" would exist to convert or dismiss the debtor's Chapter 13 case under Section 1307(c).

35. In support of this, the Debtor submits that the Debtor's former bankruptcy counsel did not properly represent his interests in this case, necessitating this Motion. The Debtor's former counsel failed to properly complete the Debtor's Petition, Schedules and Statements, requiring forthcoming amendments. Further, the Debtor's former counsel advised the Debtor to commence a Chapter 7 case where, had a reasonabe inquiry been conducted into the facts underlying the Debtor's petition and schedules, a Chapter 13 case would have instead been filed on May 5, 2023. "A debtor's attorney also bears a significant degree of responsibility in assuring to the best of his of her ability that the schedules are complete and accurate before they are filed." *See In re Tufano*, No. 1-10-bk-07692 R, 2011 Bankr. LEXIS 1399, at *13-14 (Bankr. M.D. Pa. Apr. 19, 2011) (*citing In re Arnold*, 369 B.R. 266, 272 (Bankr. W.D.Va. 2007)). A true and correct copy of *In re Tufano* is annexed hereto as <u>Exhibit A</u>. Moreover, it must be noted that English is a second language to the Debtor, adding more of an obligation and responsibility on the Debtor's former counsel's to diligently represent the Debtor in this case.

8

36. The Debtor submits that he filed this case in good faith and, at all times, with the intention to comply with all obligations under the Bankruptcy Code and Rules. The Debtor, similarly, seeks to convert this case from Chapter 7 to Chapter 13 in good faith.

37. It is anticipated that the Trustee will file an objection to Motion claiming, *inter alia*, "bad faith" by the Debtor. Courts have held that a determination of "bad faith" requires an examination of the totality of the circumstances. *In re Marino*, 388 B.R. 679, 682 (Bankr. E.D.N.C. 2008). Here, it is undisputed that the Debtor appeared not only at the 341(a) Meeting of Creditors and provided testimony under oath as to his assets, but the Debtor also then subsequently complied with the Trustee's requests for three (3) further in-person meetings at the Trustee's office in Matawan, New Jersey. The Trustee cannot, in good faith, argue that the Debtor did not engage in the meetings called by the Trustee and, at all times relevant, work to comply with the Trustee's requests for documents and information.

38. The Debtor's conduct reflects his good faith in navigating this matter, despite the issues arising as a result of the Debtor's former counsel's representation, which good faith favors conversion of this case.

39. The Debtor further submits that public policy favors conversion of the Debtor's case from Chapter 7 to Chapter 13 because conversion is on the best interest of the Debtor's estate. Conversion will allow the Chapter 13 trustee to maximize any distribution to general unsecured creditors, whose interests are currently represented by the Trustee, while reducing the amount of administrative costs associated with the Trustee's unnecessary and excessive litigious tactics and allow the Debtor to reorganize.

40. In addition to the support for conversion found in Section 706(a), this Court has the power under Section 105(a) to "issue any order, process, or judgment that is necessary or

appropriate to carry out the provisions of this title," thereby codifying the bankruptcy courts' inherent equitable powers. 11 U.S.C. §§ 706(a) and 105(a).

## CONCLUSION

41. Debtor seeks by way of this Motion entry of an Order converting his Chapter 7 case to a Chapter 13 case.

42. No prior request for the relief sought in this Motion has been made to this Court or any other court.

43. Notice of this Application has been provided to (i) the Chapter 7 trustee and his counsel; (ii) the Office of the United States Trustee for Region 3; (iii) all creditors; (iv) the Internal Revenue Service; (v) the United States Attorney's Office for the District of New Jersey; and (vi) any party requesting notice pursuant to Bankruptcy Rule 2002.

44. The Debtor submits that, in view of the facts and circumstances, such notice is sufficient, and that no other or further notice need be provided.

**WHEREFORE**, the Debtor respectfully requests entry of the proposed Order and the granting the relief requested herein, and such other and further relief as the Court may deem just and appropriate.

Respectfully submitted,

**MIDDLEBROOKS SHAPIRO, P.C.**
*Substituted Counsel for Byung Rai Cho*

/s/ Melinda D. Middlebrooks
By: Melinda D. Middlebrooks, Esq.

Dated: October 20, 2023

# Exhibit

# "A"

Positive
As of: October 20, 2023 6:52 PM Z

# In re Tufano

United States Bankruptcy Court for the Middle District of Pennsylvania

April 19, 2011, Decided

CHAPTER 7, CASE NO. 1-10-bk-07692 RNO

**Reporter**
2011 Bankr. LEXIS 1399 *; 65 Collier Bankr. Cas. 2d (MB) 817

IN RE: JOSEPH C. TUFANO dba FAST TRACK ENTERPRISES and REBECCA REEVES-TUFANO, Debtors

## Core Terms

Conversion, convert, male, schedules, exemption, advice, financial affairs, prepetition, good faith, confirmable, transferred, monthly, factors

## Case Summary

### Procedural Posture

Bankruptcy debtors moved to convert their Chapter 7 bankruptcy case to a case under Chapter 13 pursuant to *11 U.S.C.S. § 706(a)*, and the bankruptcy trustee objected to conversion on the grounds that the debtors were untruthful and could not propose a confirmable Chapter 13 plan.

### Overview

The trustee contended that the debtors failed to disclose that one debtor transferred title to the debtors' residence to both debtors before their bankruptcy petition was filed, and affirmatively represented that they engaged in no pre-petition transfers. The debtors contended that their former bankruptcy counsel suggested the transfer and advised the debtors to deny any pre-petition transfers. The bankruptcy court held that there was no indication that conversion was requested by the debtors in bad faith, since it appeared that any misstatements or omissions of the debtors stemmed from the advice and actions of the debtor's former counsel. There was unrebutted testimony that counsel gave the debtors, at the very least, erroneous advice, and the debtors discharged counsel and filed a disciplinary complaint against counsel. Further, the debtors attempted to cooperate with the trustee and the court, promptly made subsequent amendments to correct the deficiencies, and did not engage in purposeful delay. Also, the debtors took steps to improve their employment circumstances and income, and there was a reasonable likelihood that the debtors could propose a confirmable plan.

### Outcome

The trustee's objection to conversion of the debtors' case was overruled, and the debtors' motion for conversion was granted.

## LexisNexis® Headnotes

Bankruptcy Law > ... > Bankruptcy > Conversion & Dismissal > Liquidations

**HN1**[ ] **Conversion & Dismissal, Liquidations**

See *11 U.S.C.S. § 706(a)*.

Bankruptcy Law > ... > Bankruptcy > Conversion & Dismissal > Liquidations

*HN2*[🔽] **Conversion & Dismissal, Liquidations**

See *11 U.S.C.S. § 706(d)*.

Bankruptcy Law > ... > Bankruptcy > Conversion & Dismissal > Liquidations

*HN3*[🔽] **Conversion & Dismissal, Liquidations**

A bankruptcy court should consider the following factors in evaluating a motion under *11 U.S.C.S. § 706(a)* to convert a bankruptcy case from Chapter 7 to Chapter 13: (i) whether the bankruptcy debtor is seeking to convert to chapter 13 in good faith (including a review of facts such as the timing of the motion to convert, the debtor's motive in filing the motion, and whether the debtor has been forthcoming with the bankruptcy court and creditors); (ii) whether the debtor can propose a confirmable chapter 13 plan; (iii) the impact on the debtor of denying conversion weighed against the prejudice to creditors caused by allowing conversion; (iv) the effect of conversion on the efficient administration of the bankruptcy estate; and (v) whether conversion would further an abuse of the bankruptcy process.

Bankruptcy Law > Procedural Matters > General Overview

Evidence > Judicial Notice > Adjudicative Facts > General Overview

*HN4*[🔽] **Bankruptcy Law, Procedural Matters**

The fact that a bankruptcy judge takes judicial notice of the bankruptcy court's records does not infer the truth of the facts contained in the documents which may still have to be proven by admissible evidence.

Bankruptcy Law > Procedural Matters > Professional Responsibility

*HN5*[🔽] **Procedural Matters, Professional Responsibility**

A bankruptcy debtor's attorney bears a significant degree of responsibility in assuring to the best of his of her ability that the schedules are complete and accurate before they are filed.

Real Property Law > Estates > Concurrent Ownership > Tenancies by Entireties

*HN6*[🔽] **Concurrent Ownership, Tenancies by Entireties**

Pennsylvania state law provides that property owned by a husband and wife is held as tenants by the entirety. A husband or wife do not own separate interests in entireties property which can be reached by his or her individual creditors.

Bankruptcy Law > Conversion & Dismissal > General Overview

*HN7*[🔽] **Bankruptcy Law, Conversion & Dismissal**

Bankruptcy courts recognize that conversion of a bankruptcy case should not be permitted when it would serve no point, for example, where the bankruptcy debtor lacks sufficient income to fund a Chapter 13 plan.

**Counsel:** **[*1]** For Joseph C. Tufano dba Fast Track Enterprises, Debtor: Tracy Lynn Updike, Cunningham and Chernicoff, PC, Harrisburg, PA.

For Rebecca Reeves-Tufano, Joint Debtor: Tracy Lynn Updike, Cunningham and Chernicoff, PC, Harrisburg, PA.

For Steven M. Carr, Trustee: Law Firm of Ream Carr Markey and Woloshin; Steven M. Carr, Ream, Carr, Markey & Woloshin LLP, York, PA.

**Judges:** Robert N. Opel, II, Bankruptcy Judge.

**Opinion by:** Robert N. Opel, II

## Opinion

**OPINION**[1]

The Debtors moved to convert to this Chapter 7 case to a case under Chapter 13 of the Bankruptcy Code. The Chapter 7 Trustee timely objected to the conversion alleging that the Debtors had been untruthful and that they could not propose a confirmable Chapter 13 plan. For the reasons stated below, I will overrule the Chapter 7 Trustee's Objections and grant the Motion to Convert to Chapter 13.

### I. Jurisdiction

This Court has jurisdiction over this matter pursuant to *28 U.S.C. § 1334* and *§ 157(b)(2)*. This is a core proceeding under *28 U.S.C. § 157(b)(2)(A)*.

### II. Facts

On September 21, 2010, Joseph C. Tufano

---

[1] Drafted with the assistance of Ryan B. White, Esquire, Law Clerk.

and Rebecca Reeves-Tufano ("Debtors") filed a voluntary petition under Chapter 7 of the Bankruptcy Code. **[*2]** Steven M. Carr, Esquire was subsequently appointed as the Chapter 7 Trustee ("Chapter 7 Trustee") in this case.

The Debtors filed their schedules of assets and liabilities as well as the Statement of Financial Affairs and other required documents. Original Schedule A - Real Property listed property in Stewartstown, Pennsylvania ("Residence") as being jointly owned with a scheduled value of $255,000.00. Schedule C - Property Claimed as Exempt claimed the entire value of the Residence, $255,000.00, as being exempt pursuant to the provisions of Pennsylvania law.

In the original Statement of Financial Affairs, Question Number 10 was answered by completing the box labeled "None". Question Number 10 of the Statement of Financial Affairs required the Debtors to list any transfers of property, other than in the ordinary course of business or financial affairs, within two years before the Chapter 7 filing.

The bankruptcy docket reflects the Chapter 7 Trustee's Initial Report and Meeting of Creditors Held being filed on October 21, 2010. On October 22, 2010, the Debtors filed an amendment to the Statement of Financial Affairs. The response to Question Number 10 - Other Transfers was amended to **[*3]** reflect a September 3, 2010 transfer of the Residence from the name of the male Debtor only to the names of the male and female Debtors, jointly. The amendment does not indicate whether any value was received for the transfer.

On October 28, 2010, an amendment to Schedule C - Property Claimed as Exempt was filed. In the amended Schedule C, the Debtors select what are commonly known as the "Federal Exemptions". Selection of the Federal Exemptions is allowed in bankruptcy

cases filed in Pennsylvania pursuant to 11 U.S.C. § 522(b)(2) ² In the amended exemptions, an exemption was claimed in the Residence in the amount of $21,625.00 pursuant to § 522(d)(1).

On November 2, 2010, a document titled "Stipulation to Avoid Transfer Pursuant to Section 548" was filed herein. The three-paragraph Stipulation provided for the avoidance of the transfer of the Residence from the male Debtor alone to his wife and him, jointly.

On December 6, 2010, new bankruptcy counsel **[*4]** entered her appearance for the Debtors. Simultaneously with this entry of appearance, original bankruptcy counsel, James M. Bach, Esquire, withdrew his appearance for the Debtors.

On December 28, 2010, the Debtors filed a Motion to Convert Case to Chapter 13 ("Conversion Motion"). The Conversion Motion was noticed to creditors and on January 12, 2011, the Chapter 7 Trustee filed a timely objection to the Conversion Motion. On February 22, 2011, the Debtors, through new counsel, filed amendments to Schedules A, C, I, and J. Schedule A listed the Residence as being owned by the male Debtor only with a value "minus cost of sale" of $240,300.00. The second amended Schedule C maintained the Federal Exemption election and continued to claim an exemption in the amount of $21,625.00 in the Residence pursuant to § 522(d)(1).

Amended Schedule I - Current Income of Individual Debtor(s) generally differs from Original Schedule I in several ways. First, it reflects that the male Debtor now works for a third party employer; he was self-employed at the time of the Chapter 7 filing. Second, the Amended Schedule I shows that the female Debtor is now employed; she was unemployed at the time of the Chapter **[*5]** 7 filing. Further, the Original Schedule I showed a combined average monthly income of $2,840.00. It is noted that this figure included $1,200.00 per month denoted as "Help from family". Amended Schedule I shows combined average monthly income of $3,977.26. Amended Schedule I shows no indication of "Help from family".

Amended Schedule J - Current Expenditures of Individual Debtor(s) differs from original Schedule J in that the Original Schedule J included expenses totaling $2,968.00 - it also shows an average monthly net income of- $128.00. Amended Schedule J shows total monthly expenses of $3,427.00 and monthly net income of $550.26. Amended Schedule J also reflects increases in the Debtors' household expenses and elimination of any business expenses.

An evidentiary hearing was held on the Conversion Motion on February 24, 2011. The Chapter 7 Trustee and the Debtors have filed post-hearing briefs setting forth their positions and the Conversion Motion is now ripe for decision.

### III. Discussion

**A. Conversion Under § 706(a)**

Section 706(a) of the Bankruptcy Code provides:

> HN1[↑] (a) The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if **[*6]** the case has not been converted

---

² Unless otherwise noted, all future statutory references are to the Bankruptcy Code, **11 U.S.C. § 101, et seq.**, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("BAPCPA").

under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this title is unenforceable.

The United States Supreme Court considered whether a Chapter 7 debtor has an absolute right to convert to Chapter 13 in the case of *Marrama v. Citizens Bank of Massachusetts, 549 U.S. 365, 127 S.Ct. 1105, 166 L. Ed. 2d 956 (2007)*. In *Marrama*, the debtor transferred a valuable residence to a self-created trust seven months before filing his Chapter 7 bankruptcy. The debtor disclosed that he was the sole beneficiary of the trust that owned the property but he listed the property's value as zero. The debtor in *Marrama* also denied that he had transferred any property, other than in the ordinary course of business, during the year preceding the filing of his petition. After the Chapter 7 trustee indicated an intention to recover the real property as an asset of the estate, the debtor in *Marrama* filed a notice of conversion to Chapter 13. Objections to the conversion were filed by the Chapter 7 trustee and a secured creditor.

Justice Stevens authored the majority opinion in *Marrama*. The majority did not find an explicit absolute right to convert to Chapter [*7] 13. It noted that the right to convert provided for in § 706(a) is conditioned by the language in § 706(d). Section 706(d) provides:

> HN2[↑] (d) Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.

The Supreme Court went on to note:

> There are at least two possible reasons why Marrama may not qualify as such a debtor, one arising under § 109(e) of the Code, and the other turning on the construction of the word "cause" in § 1307(c). The former provision imposes a limit on the amount of indebtedness that an individual may have in order to qualify for Chapter 13 relief. More pertinently, the latter provision, § 1307(c), provides that a Chapter 13 proceeding may be either dismissed or converted to a Chapter 7 proceeding "for cause" and includes a nonexclusive list of 10 causes justifying that relief. None of the specified causes mentions prepetition bad-faith conduct (although paragraph (10) does identify one form of Chapter 7 error-which is necessarily prepetition conduct-that would justify dismissal of a Chapter 13 case). Bankruptcy courts nevertheless routinely treat dismissal [*8] for prepetition bad-faith conduct as implicitly authorized by the words "for cause". See n. 1, *supra*. In practical effect, a ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of prepetition bad-faith conduct, including fraudulent acts committed in an earlier Chapter 7 proceeding, is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13. That individual, in other words, is not a member of the class of "'honest but unfortunate debtor[s]'" that the bankruptcy laws were enacted to protect. See *Grogan v. Garner, 498 U.S. at 287, 111 S.Ct. 654*. The text of § 706(d) therefore provides adequate authority for the denial of his motion to convert.

*Marrama v. Citizens Bank of Massachusetts, 549 U.S. 365, 372-374, 127 S.Ct. 1105, 1110-1111, 166 L. Ed. 2d 956 (2007)*.

The Supreme Court in *Marrama* did not delineate a specific test for a bankruptcy court to use in determining whether or not a debtor's attempted conversion from Chapter 7 to Chapter 13 would be bad faith. Prior to the *Marrama* decision, there was case law in the Third Circuit enumerating factors which a court should consider in determining whether a Chapter 13 case should be [*9] dismissed

pursuant to § 1307(c). See In re Lilley, 91 F.3d 491, 496 (3d Cir. 1996); In re Myers, 491 F.3d 120, 125 (3d Cir. 2007). The general thrust of the case law is that the Bankruptcy Court should make a fact-intensive inquiry and consider the totality of the circumstances presented.

I agree with other courts that it is logical to use the same "totality of the circumstances" analysis, which is applied to § 1307(c) motions to dismiss, to analyze the propriety of a § 706(a) motion to convert.

The Eastern District of Pennsylvania has stated that HN3[↑] a court should consider the following factors in evaluating a § 706(a) motion to convert from Chapter 7 to Chapter 13:

> (i) whether the debtor is seeking to convert to chapter 13 in good faith (including a review of facts such as the timing of the motion to convert; the debtor's motive in filing the motion; and whether the debtor has been forthcoming with the bankruptcy court and creditors);
> (ii) whether the debtor can propose a confirmable chapter 13 plan;
>
> (iii) the impact on the debtor of denying conversion weighed against the prejudice to creditors caused by allowing conversion;
>
> (iv) the effect of conversion on the efficient administration of [*10] the bankruptcy estate; and
>
> (v) whether conversion would further an abuse of the bankruptcy process.

In re Piccoli, 2007 U.S. Dist. LEXIS 72533, 2007 WL 2822001, *7 (E.D.Pa. 2007).

## B. Bad Faith Considerations

In this case, the Debtors argue that any error in the Original Statement of Financial Affairs and any misstatements they may have made during the Section 341 Meeting were caused by erroneous advice received from original bankruptcy counsel. Debtors' Br. 10. At the hearing in this matter, the male Debtor testified that he first met with Attorney Bach in May, 2010. He testified that he told Attorney Bach that he owned the Residence individually; he also provided counsel a general listing of his assets and liabilities. He testified that Attorney Bach suggested that the male Debtor consider transferring the Residence from individual ownership to joint ownership with his wife, the female Debtor. He testified that Attorney Bach indicated that he would prepare such a deed for $150.00, or, the Debtors could have the transfer handled by another attorney. The male Debtor testified that Attorney Bach wrote on the back of his business card words to the effect of "$1.00 from Grantor back to Grantor and Grantee".

The Chapter [*11] 7 Trustee essentially concedes that original bankruptcy counsel advised the Debtors to make the pre-petition transfer of the Residence and to omit the transfer in response to Question Number 10 of the Statement of Financial Affairs. Trustee's Br. 1. However, the Chapter 7 Trustee further argues that the Debtors committed perjury at the Section 341 Meeting and that shows an absence of good faith. The Chapter 7 Trustee maintains that the testimony given by the Debtors at the Section 341 Meeting, even if made upon advice of counsel, is grounds to deny the Conversion Motion.

There is, of course, no objective test to determine whether or not the Conversion Motion was filed in good faith. A number of reported cases have denied a motion to convert to Chapter 13 where the debtor omitted an asset from his or her bankruptcy schedules. See In re Pakuris, 262 B.R. 330, 336 (Bankr. E.D.Pa. 2001); In re Shafer, 2009 Bankr. LEXIS 1386, 2009 WL 1651294, *8

*(Bankr. D.N.J. 2009)*; *In re Piccoli, 2007 U.S. Dist. LEXIS 72533, 2007 WL 2822001, *8 (E.D.Pa. 2007)* (debtor did not disclose the full value of the asset).

I find the above cases somewhat distinguishable from the case at bar. Here, the Debtors did not fail to schedule the Residence as an asset. However, **[*12]** in the Original Statement of Financial Affairs, they did not disclose the pre-petition transfer from the male Debtor alone into the names of both Debtors.

There was unrebutted testimony that the transfer of the real property was effected upon the advice of original bankruptcy counsel, Attorney Bach. It is noted that Attorney Bach did not testify at the hearing on the Conversion Motion. The male Debtor also testified that two days before the Section 341 Meeting, Attorney Bach advised him, if he were asked if he had transferred any property in the last ninety days, "that I was to reply no". It is noted that no hearsay objection was interposed to the male Debtor's testimony concerning what Attorney Bach told him.

There is a rather slim record for me to analyze whether the Conversion Motion was brought in good faith. I can and do take judicial notice pursuant to *Federal Rule of Evidence 201* of the docket in this bankruptcy matter. *In re Argus Group 1700, Inc., 206 B.R. 737, 742 (Bankr. E.D.Pa. 1996)*. **HN4**[↑] The fact that a bankruptcy judge takes judicial notice of the bankruptcy court's records does not infer the truth of the facts contained in the documents which may still have to be proven by **[*13]** admissible evidence. *In re Harmony Holdings, LLC, 393 B.R. 409, 413 (Bankr. D.S.C. 2008)*.

There is unrebutted testimony on the record that Attorney Bach gave the Debtors, at the very least, erroneous advice. What bearing should that have on the disposition of the Conversion Motion? Reliance on advice of counsel made in good faith may negate an intent to defraud under *§ 727(a)(4)(A)*. *In re Petersen, 323 B.R. 512, 519 (Bankr. N.D.Fla. 2005)*. *Section 727(a)(4)(A)* is often referred to as the "false oath" discharge exception. I recognize that advice of counsel may not serve as a defense if the client had not disclosed all relevant facts to an attorney who based his or her advice on incomplete or incorrect facts. However, in this case, Attorney Bach could easily verify how the Residence was titled, at any point in time, by merely reviewing the recorded deeds which are public records. I consider it customary for bankruptcy counsel to conduct a search in the appropriate recorder of deeds' office as part of his or her preparation of bankruptcy schedules for a debtor/client. Also:

> **HN5**[↑] A debtor's attorney also bears a significant degree of responsibility in assuring to the best of his of her ability **[*14]** that the schedules are complete and accurate before they are filed.

*In re Arnold, 369 B.R. 266, 272 (Bankr. W.D.Va. 2007)* (denying false oath exception under *§ 727(a)(4)(A)* based upon advice of counsel).

I noted above the differentiation between this case and a case where a debtor failed to disclose an asset. The male Debtor was cross examined by the Chapter 7 Trustee concerning the advice he received from Attorney Bach concerning ownership of the Residence. In response to one question, the male Debtor testified "he told me I was covered under a PA customary law. If you get the property into your name and your wife's name. I told him that the house was important and we wanted to be protected". **HN6**[↑] Pennsylvania state law does provide that property owned by a husband and wife is be held as tenants by the entirety. A husband or wife do not own separate interests in entireties

Case 23-13862-RG    Doc 34-1    Filed 10/20/23    Entered 10/20/23 19:26:42    Desc Brief
Page 19 of 20

Page 8 of 9
2011 Bankr. LEXIS 1399, *14

property which can be reached by his or her individual creditors. *Stop 35, Inc. v. Haines, 374 Pa.Super. 604, 607, 543 A.2d 1133, 1135 (1988)*; *In re Houck, 184 B.R. 21, 23 (Bankr. E.D.Pa. 1995)*. It has been my experience that the application of the Pennsylvania tenancy by the entireties provisions in Federal bankruptcy [*15] matters can befuddle seasoned, non-bankruptcy attorneys. I find it credible that the Debtors were misadvised, if not mislead, by Attorney Bach concerning the Residence. I believe it is reasonable to expect debtors to list all of the assets that they own when they file their bankruptcy schedules. I do not believe it is reasonable to expect debtors, even when represented by counsel, to understand the arcane nature of state exemption laws and the provisions of the Bankruptcy Code concerning pre-petition transfers.

It is significant to me that the Debtors have shown a general attempt to cooperate with the Chapter 7 Trustee and the Court in this matter. Nothing on the docket reflects any allegation by the Chapter 7 Trustee that the Debtors have failed to provide any requested information. Also, the factual summary above lists various amendments to the Schedules and Statement of Financial Affairs which appear to be a good faith attempt to correct any deficiencies in the Original Schedules and Statements. The Debtors appeared for questioning at the Section 341 Meeting and they both testified at the hearing on the Conversion Motion.

I find that the Debtors have not engaged in purposeful delay [*16] of these proceedings. A stipulation to avoid the transfer of the Residence was filed less than two weeks after the Section 341 Meeting without the Chapter 7 Trustee even filing an adversary proceeding. Also, the Debtors discharged Attorney Bach, filed a complaint against him with the Disciplinary Board of the Supreme Court of Pennsylvania, and obtained new bankruptcy counsel. New counsel filed the Conversion Motion as well as the February 22, 2011, amendments to Schedules A, C, I, and J.

The Debtors have taken steps to better their financial circumstances. The male Debtor left self-employment, obtained third party employment and has significantly increased his average earnings. The female Debtor testified that some of her health problems, which caused her to leave the workforce, had been resolved and she recently obtained new employment.

The Chapter 7 Trustee argues that the Debtors committed perjury at the Section 341 Meeting. The male Debtor was questioned by the Chapter 7 Trustee at the hearing on the Conversion Motion concerning some of his testimony at the Section 341 Meeting. No transcript of the Section 341 Meeting was offered into evidence. The Chapter 7 Trustee has well-discharged [*17] his duty to the creditors and the Court in this case. However, this record does not convince me that any purposefully false testimony was given by the Debtors at the Section 341 Meeting. Considering the totality of the circumstances, I cannot find an absence of good faith in the Debtors filing of the Conversion Motion.

## C. Whether the Debtors Can Propose a Confirmable Plan

Another factor which I must consider is the question of the Debtors' ability to propose a confirmable Chapter 13 plan. *HN7*[↑] Courts have recognized that conversion should not be permitted when it would serve no point, for example, where a debtor lacks sufficient income to fund a Chapter 13 plan. *In re Pakuris, 262 B.R. 330, 337 (Bankr. E.D.Pa. 2001)*; see also, *In re Shafer, 2009 Bankr. LEXIS 1386, 2009 WL 1651294, *9 (Bankr. D.N.J. 2009)*; compare *In re Murray, 377 B.R. 464, 470 (Bankr. D.Del. 2007)*.

The Chapter 7 Trustee's Objection to the Conversion Motion alleged, in part, that the Debtors lacked sufficient income to propose a feasible Chapter 13 plan. However, this allegation is not addressed in the Chapter 7 Trustee's Brief and the position appears to have been abandoned.

No proposed Chapter 13 plan had been filed in this matter at the time the [*18] record was closed on the hearing on the Conversion Motion. Therefore, any consideration of the Debtors' ability to propose a confirmable Chapter 13 plan must be somewhat cursory. I do find that the Debtors are eligible to be debtors under Chapter 13 of the Bankruptcy Code pursuant to *§ 109(e)*. Currently, both Debtors earn regular income. I also find that the scheduled unsecured and secured debts in this case are well within the debt limitations for Chapter 13 relief. *Section 109(e)*. Further, as noted above, Amended Schedule J shows a monthly net income of $550.26. Based upon these factors, I find that there is a reasonable likelihood that the Debtors can propose a confirmable Chapter 13 plan.

### D. Other Factors

I cannot find that allowing the conversion to Chapter 13 will occasion undue delay or prejudice to the creditors in this case. I note that there has been no motion for relief from the automatic stay filed by the secured creditor in this matter. Further, the docket does not reflect that the Chapter 7 Trustee had taken any steps to attempt to liquidate the Residence at the time the Conversion Motion was filed. No motion to sell the Residence was filed by the Chapter 7 Trustee. Nor [*19] was an application to employ a realtor or auctioneer filed. Thus, I cannot find that conversion would have a significant impact on the efficient administration of the bankruptcy estate.

In contrast, denying conversion would likely lead to liquidation of the Residence, with the attendant loss of the Debtors' non-exempt equity therein. It is my estimation that most of the difficulties encountered by each of the parties in this case stem from the advice given and actions taken by original bankruptcy counsel for the Debtors. I believe this compounds the impact that denial of the Conversion Motion would have upon the Debtors.

Based upon all of the factors which I discussed at length in Section B, Bad Faith Considerations, I find that conversion would not further an abuse of the bankruptcy process.

### IV. Conclusion

For all of the foregoing reasons, I will overrule the Objections of the Chapter 7 Trustee and grant the Conversion Motion. An order will be entered consistent with the foregoing Opinion.

Date: April 19, 2011

By the Court,

/s/ Robert N. Opel, II

Robert N. Opel, II, Bankruptcy Judge

---

**End of Document**